QUESTION:
Can a new municipality, if approved by the voters in a special election to be held July 16 to take effect on October 1, 1974, and for which the charter has provided for a two or three-mill operating budget for the first year in its transition article receive the full two or three-mill levy to be collected when the tax bills are mailed on or about November 1 for the operating period October 1, 1974, to September 30, 1975?
SUMMARY:
A municipality incorporated effective October 1, 1974, is not absolutely barred from levying ad valorem taxes for all of 1974, assuming proper statutory authority is granted in the charter. But such a municipality would be in danger of failing to comply with essential statutory procedures for ad valorem tax assessment and collection if the incorporation, either in toto or pursuant to a schedule, is not effective at a date early enough to insure compliance with all essential procedures required by law.
The question of property tax levies by a municipality for the year in which it is incorporated has been considered in previous opinions. Attorney General Opinions 055-108 and 071-52. These opinions indicate generally that there is no absolute bar to a property tax levy by a municipality incorporated during the tax year. The peculiar circumstances attendant upon each municipality's incorporation coupled with the applicable provisions of general law determine the authority to make such a levy.
In AGO 055-108, a city was created by incorporation of areas covered by preexisting municipalities which were simultaneously abolished. The conclusion was that tax liens were created on the preceding January 1, in favor of the preexisting municipalities and that the new municipality succeeded to the rights and obligations of the old municipalities including the assessment and collection of taxes.
In AGO 071-52, I concluded that the City of Cape Coral could not make a tax levy for its year of incorporation. However, Cape Coral's Charter failed to provide an express authorization for a retroactive levy. The incorporation of Cape Coral also occurred after the date for certification of the millage. Section 167.433(3), F.S., renumbered s. 195.201(3), F.S., by s. 3(2), Ch. 73-129, Laws of Florida. Furthermore, it appeared that substantial compliance with budget procedures established by the charter would be impossible.
Pursuant to the 1968 Constitution and the Municipal Home Rule Powers Act, Ch. 73-129, Laws of Florida, the taxing power of municipalities is provided by general law. Part III, Ch. 166, F. S., as enacted by s. 1, Ch. 73-129, provides in part:
"166.201 Municipalities; taxes and charges. — A municipality may raise, by taxation and licenses authorized by the constitution or general law, and by user charges or fees, authorized by ordinance, amounts of money which are necessary for the conduct of municipal government, and may enforce their receipt and collection in the manner prescribed by ordinance not inconsistent with law. 166.211
Ad valorem taxes. — (1) Pursuant to s. 9, Art. VII of the state constitution, a municipality is hereby authorized, in a manner not inconsistent with general law, to levy ad valorem taxes on real and tangible personal property within the municipality . . . . (2) The assessment and collection of municipal ad valorem taxes shall be performed by appropriate officers as prescribed by general law. . ."
Section 166.221 authorizes a municipality to levy regulatory fees and s. 166.231 provides for a municipal utility tax.
I do not have a copy of the proposed charter, and from your inquiry it is not clear whether there is any express mention of relating the tax back to January 1, 1974. Such an express provision would be necessary to eliminate any problems regarding the retroactive nature of the levy. State v. Green, 101 So.2d 805
(Fla. 1958). Cf. AGO 072-268.
The major problem appears to be the late effective date of incorporation, i.e., October 1, 1974. By this time the taxation process in the county will probably have reached such a point that substantial compliance with general law would be impossible. The basic procedural steps likely to occur prior to October 1 are: Filing for exemptions by April 1 (ss. 196.131, 196.011, and193.461, F.S.); submitting budget of tax assessor to Department of Revenue (s. 195.087, F.S., as amended by s. 6, Ch. 73-172, Laws of Florida); submitting tax roll to the Executive Director, Department of Revenue (s. 193.114, F.S., as amended by s. 10, Ch. 73-172); notifying taxpayers whose assessments have been increased (s. 194.011, F.S., as amended by s. 11, Ch. 73-172); hearing petitions, complaints and appeals by board of tax adjustment (s.194.032, F.S., as amended by s. 12, Ch. 73-172); certifying of assessment roll by board of tax adjustment (s. 193.122[1], F.S., as amended by s. 9, Ch. 73-172); and certifying to municipality by the assessor the total assessed valuation of all property located within that municipality (s. 167.433[3], F.S.). Within thirty days after the last step is completed, the municipality is to certify to the assessor the millage rate desired by the municipality. Id. Section 200.061, F.S., created by s. 13, Ch. 73-172, establishes a procedure to be followed by a taxing authority desiring to increase its millage from the prior year. This section has been administratively construed by the Department of Revenue pursuant to its rule-making powers so as not to apply to those taxing authorities initiating an ad valorem tax. Section195.027, F.S., amended and renumbered by s. 2, Ch. 73-172. The only remaining steps are for the assessor to extend the taxes and certify the tax rolls to the tax collector. Section 193.122, F.S.
Thus, in the best interests of the new municipality and the various affected public officials I suggest that either the incorporation be effective on the date specified for the referendum (July 16), and that the charter act clearly and specifically provide that the added burden of municipal taxation on property within its boundaries shall relate back to the tax day, January 1, 1974, for the 1974 tax year, or that for purposes of budgeting for the fiscal period October 1, 1974, through September 30, 1975, and for purposes of establishing and properly levying and certifying the municipal ad valorem taxes for that period, the initial governing body shall have such legal existence, status, and power from the date the special law is approved at referendum until October 1, 1974. With the latter alternative it should also be provided that, if required for expenses, salaries, etc., of the initial governing body, municipal officers, or prescribed purposes, the initial governing body shall have the power to borrow money, not to exceed some fixed reasonable amount, upon tax anticipation notes to be payable within twelve months from the date of issuance out of ad valorem tax revenues collected by the city during fiscal year 1974-1975, or from a supplementary pledge of any excise or license taxes collected by the city during the 1974-1975 fiscal year.